UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW W. ALBSTEIN, individually, and on
behalf of all others similarly situated,

                                    Plaintiff,

            -against-

SIX FLAGS ENTERTAINMENT
CORPORATION and LO-Q INC.,

                                    Defendants.

10 Civ. 5840 (RJH)

**MEMORANDUM OPINION
AND ORDER**

---

Richard J. Holwell, District Judge:

        Plaintiff Andrew W. Albstein ("Albstein") commenced this action in New York Supreme

Court, County of New York on July 9, 2010, alleging that defendants Six Flags Entertainment

Corporation ("Six Flags") and Lo-Q Inc. ("Lo-Q") committed various torts against him.  On

August 3, 2010, Six Flags filed a Notice of Removal pursuant to 28 U.S.C. § 1446 to remove the

action to this Court.  On September 2, 2010, Albstein filed a motion to remand this action to

New York Supreme Court pursuant to 28 U.S.C. § 1447(c).  Oral argument was held on

September 29, 2010, during which the Court granted Albstein's motion to remand **[9]** and stated

that a written opinion, as set forth herein, would follow.

## BACKGROUND

        This case arises out of Albstein's June 20, 2010 visit to the Six Flags Great Adventure

theme park (the "Park").  The complaint alleges that Albstein took a group to the Park on that

day.  (Compl. ¶ 13.)  Several members of the group attempted to use a Flash Pass, a device

operated by Lo-Q that allows a Park customer to bypass the line for a particular attraction at a

1

time assigned by the device, on one of the Park's rides.  (Compl. ¶¶ 17-22.)  A disagreement

about whether they were entitled to bypass the line ensued, and at one point the Park's security

officers detained Albstein because of this disagreement.  (Compl. ¶¶ 23-41.)  Albstein then filed

suit in New York Supreme Court, raising several causes of action, including: (1) false

imprisonment; (2) assault; (3) intentional infliction of emotional distress; (4) breach of contract;

and (5) violations of the New Jersey Consumer Fraud Act.  (Compl. ¶¶ 48-125.)

Six Flags filed a Notice of Removal on August 3, 2010, alleging that this Court has

diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  All agree that Albstein is a

citizen of New York, but Six Flags's citizenship is disputed.  In his original complaint, Albstein

claimed that Six Flags is a Delaware corporation with its principal place of business in New

York.  (Compl. ¶ 4.)  Six Flags, however, contends that it is, and was at all relevant times, a

Delaware corporation with its principal place of business in Texas.  (Notice of Removal ¶ 1.)

On September 2, 2010, Albstein filed this motion to remand, claiming that this Court lacks

diversity jurisdiction over the matter and that the Notice of Removal was defective as a matter of

law because Lo-Q's failure to join in the request in a timely fashion violated the rule of

unanimity.

## DISCUSSION

### I.  Legal Standard

A defendant may remove an action from state court to federal court if the federal court

possesses subject matter jurisdiction over the matter.  *See* 28 U.S.C. § 1441(a).  Federal courts

have diversity jurisdiction over a matter "where the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

28 U.S.C. § 1332(a).  If a corporation is involved, "a corporation shall be deemed to be a citizen

of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The Supreme Court has recently concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . the corporation's 'nerve center.'"  *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010).

A district court is required to remand a removed case to state court if at any time before final judgment it determines that it lacks subject matter jurisdiction in the case.  28 U.S.C. § 1447(c).  "The burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it.  When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."  *Hertz*, 130 S.Ct. at 1194-95 (internal citations omitted); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.").  "Complete diversity of citizenship of the parties is required, since an 'action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Bounds v. Pine Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1441(b)).  Where removal is predicated on diversity, the parties must be diverse both at the time of removal and at the time the state court complaint was filed.  *See, e.g.*, *Vasura v. Acands*, 84 F. Supp. 2d 531, 535 (S.D.N.Y. 2000).  Federal courts, "out of respect for the limited jurisdiction of the federal courts and the rights of states," are to "resolve any doubts against removability."  *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 488 F.3d 112, 124 (2d Cir. 2007).

## II. Application

Albstein submitted several pieces of evidence along with its motion to remand to challenge Six Flags's assertion that this Court has diversity jurisdiction.  First, Albstein submitted records from the New York Department of State's website indicating that Six Flags's principal executive office was in New York.  (Declaration of Matthew Hearle dated September 2, 2010 ("First Hearle Decl.") Ex. C.)  Second, Six Flags's most recent Annual Franchise Tax Report filed with the State of Delaware listed New York as its principal place of business.  (First Hearle Decl. Ex. D.)  Finally, excerpts from Six Flags's website indicate that it maintains corporate offices in New York.  (First Hearle Decl. Exs. E, F.)

Therefore, Six Flags has the burden of showing that it was a citizen of Texas and not New York on July 9, 2010, the day Albstein filed his complaint in New York state court.  Six Flags adduces three pieces of evidence that attempt to show that its principal place of business had moved to Texas by that date.  First, Six Flags proffers the affidavit of Walter S. Hawrylak ("Hawrylak"), the Senior Vice President, Administration and Secretary of Six Flags.  Hawrylak asserts that "[i]n June 2010, [Interim Chief Executive Officer Alexander] Weber changed [Six Flags's] corporate headquarters to Grand Prairie, Texas, which is the nerve center of the company and where all major corporate decisions are made."  (Hawrylak Affidavit ¶ 3.)  In his reply, however, Albstein submitted an article from the *Dallas Morning News* that contradicts Hawrylak's timeline.  The article, dated July 2, 2010, indicates that "[t]he amusement park company *will move* several corporate positions, including chief executive, from New York to office space the company already has in Grand Prairie, [Texas]."  (Declaration of Matthew Hearle dated September 24, 2010 ("Second Hearle Decl.") Ex. A (emphasis added).)  It appears,

therefore, from the record that Hawrylak's assertion that Six Flags's nerve center moved in June

2010 cannot establish that the move was done in June 2010.

The rest of Hawrylak's affidavit might establish that at some point between June 2010

and the date of the affidavit, September 16, 2010, Six Flags's nerve center moved to Texas, but

fails to specify a particular date by which the move had occurred.  For example, the affidavit

asserts that "[a]fter Six Flags, Inc. emerged from bankruptcy, . . . new management established

its sole corporate headquarters at 924 Avenue J East, Grand Prairie, Texas," and that "[a]ll of

[Six Flags's] members of senior management, except for one person, are primarily based in the

Texas headquarters."  (Hawrylak Affidavit ¶¶ 5, 6.)  Neither statement, however, specifies when

the move happened; they establish only that the move was complete by September 16, 2010.

Hawrylak's claim about a June 2010 move is more consistent with the proposition that

Six Flags then announced an intent to move its nerve center rather than actually having moved it

when considered in conjunction with Six Flags's second piece of evidence.  Six Flags submitted

a Securities and Exchange Commission ("SEC") Form 8-K dated June 16, 2010 that located Six

Flags's principal executive offices in New York but stated that "commencing on June 16, 2010,

the Company implemented a workforce reduction, primarily at its New York, New York and

Dallas, Texas corporate offices. The Company also announced that it is moving the office of the

CEO to the Dallas corporate headquarters."  (Hawrylak Affidavit Ex. B.)  This statement is

consistent with a June 2010 announcement of an intent to move and a later implementation of

that move, especially considering that part of the "workforce reduction" Six Flags was to

"implement" starting on June 16, 2010 did not actually occur until July 16, 2010.  (*See id.* ("As

part of the workforce reduction, the Company terminated, without cause, its employment

agreements [with certain officials] . . . . Effective as of July 16, 2010, [these officials] will no longer be employed by the Company.").)

Finally, Six Flags submits an SEC Form 10-Q for the quarterly period ending June 30, 2010, which identifies its principal executive offices as being located in Texas. (Hawrylak Affidavit Ex. C.) The form itself, however, is dated August 16, 2010, and therefore the inference may be stronger that Six Flags's principal offices were in Texas on that date as opposed to June 30, 2010. *See In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 619 (7th Cir. 1981) ("But the form 10-Q was dated August 10, 1979, and was filed on August 14, 1979. . . . Thus, the inference is stronger that the address refers to [the company's] address on the date the form was signed than on the date of the crash."). Furthermore, plaintiff's submitted *Dallas Morning News* article would seem to combat any inference that the move to Texas was complete by June 30, 2010. In addition, the Supreme Court has cautioned that the use of a form like the SEC Form 10-Q, without more, fails to establish a corporation's principal place of business for purposes of diversity jurisdiction. *See Hertz*, 130 S.Ct. at 1195 ("[W]e reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'").

None of Six Flags's evidence, therefore, establishes that its principal place of business was in Texas on July 9, 2009, the date Albstein filed his action in state court, especially construing all doubts in favor of removal. As such, this Court lacks subject matter jurisdiction and is compelled to remand this action to state court. *See* 28 U.S.C. § 1447(c). Because the

Court is remanding this action to state court, it is unnecessary to consider Albstein's claim that the Notice of Removal is defective as a matter of law.

### III. Attorneys' Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute does not require bad faith by the removing party. *Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 923-24 (2d Cir. 1992). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

Plaintiff's application for costs and attorneys' fees is denied. Although the action is being remanded to state court, lack of jurisdiction was not obvious from the face of the removal petition, no unusual circumstances exist here, and the Court cannot conclude that defendants lacked an objectively reasonable basis for seeking removal. *See Sherman v. A.J. Pegno Construction Corp.*, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007) ("Because this Court's lack of jurisdiction was not obvious from the face of the removal petition filed in the action, the Court cannot conclude that defendants lacked an objectively reasonable basis for seeking removal.") (internal citations and quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand [9] this action for lack of subject matter jurisdiction and denies plaintiff's application for costs and fees in connection with the removal and remand.  The action is hereby REMANDED to the Supreme Court of New York, County of New York.

SO ORDERED.

Dated: New York, New York
       November **4** , 2010

                                    Richard J. Holwell
                                    United States District Judge